[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs brought an action in two counts against the defendants, Louis, Joseph and Melody Mason, claiming the non payment of a promissory note. The defendant Melody Mason had been the wife of Louis Mason when the note was executed. They subsequently divorced and she has been defaulted in the case. The operative complaint in the case is the Amended Complaint of January 19, 2001. The file does not contain an answer to that complaint, but before trial the parties, through their attorneys, agreed and stipulated that the defendants' Answer of September 27, 2000, to an earlier Amended Complaint of June 9, 2000, would constitute the Answer to this Complaint.
Because of the state of the pleadings and the question of whether or not previously pled special defenses were or were not adopted for this trial, the court summoned the attorneys for both parties for a hearing that was held on July 16, 2002. At that hearing, it was agreed and stipulated by the parties that any previously pled special defenses would be adopted by the defendants and would apply to both counts of the Amended Complaint of January 19, 2001.
In the first count of the amended complaint, the plaintiffs are seeking a foreclosure of a mortgage and in the second count they are suing for non payment of a note, which note is the same one made reference to in the first count.
All of the parties to this case were known. to each other and they or other members of their families had done business before in the money lending business. Apparently, some time before June 25, 1986, the defendant Joseph Mason determined that he needed to borrow $50,000 in order to participate with several other parties in buying a business in Stamford. He approached the plaintiff Salvatore Maresca for the loan. Maresca agreed, but wanted security. Joseph Mason then offered a mortgage CT Page 9117 on property of his brother Louis and his wife Melody on Old Farm Road in Trumbull. No agreement as to the interest rate or points was ever discussed or agreed upon prior to the closing of the loan on June 25, 1986.
The defendant Joseph Mason testified that he thought he was only borrowing $50,000. In fact, the note and mortgage deed recited the loan to him to be in the amount of $55,000. In a closing statement, it reflected that $5,000 in points was deducted from the loan, leaving a balance due the borrowers of slightly less than $50,000 after the payment of certain other costs. Mr. Maresca testified that prior to June 25, 1986, he borrowed $50,000 from Citytrust Bank so he could make the loan.
There is no evidence that at the closing there was any discussion of points or the interest rate. What is clear, however, is that all three Masons were at the closing; they all signed the note for $55,000 with interest at the rate of 13 1/2%, which amount was again made reference to in the mortgage deed executed by Louis and Melody Mason. They all got a packet of all the closing documents including the closing statement which showed the deduction of $5,000 for points. No one questioned it, objected to it or refused to go through with the transaction. The note called for interest only payments of $618.75 for 17 months commencing on April 1, 1986, with a final payment of $55,618.75 on January 1, 1988.
No claim is being made concerning the interest payments. The last payment made by Joseph Mason was on February 9, 1988, when he paid a lump sum of $45,000 and three interest payments of $618.75 each. All of the payments were made by Joseph Mason as he was the one who received the full proceeds of the loan. His brother Louis and his wife Melody merely accommodated the transaction by securing it with their property.
The basic position of Mr. Maresca is that he is still owed $10,000 on the principal plus interest to the present in the amount of $19,334.49. Mr. Mason responds that he has paid his obligation in full for a loan of $50,000, by his payment of $45,000, a credit of $5,000 for the points deducted at the closing and the interest payments the total of which well exceed $50,000.
What took place over the next nine years is very vague. Mr. Maresca claims that on several occasions he asked Joseph Mason for money and was told he would get it. He was never specific as to how much he claims was due or out of what transaction his claim was based. Louis Mason and Joseph Mason denied they were ever asked for more money from Maresca and they believed the loan was paid.
Louis Mason testified that no demand for payment was ever made against CT Page 9118 him until May 20, 1997, when he received a letter from Attorney Salvatore Maresca, the son of the plaintiff, who had originally closed the loan. He testified that he never received a notice of default, a letter as to how to cure it nor a 30 day letter or a notice of the consequences of a failure to cure, all of which are required pursuant to paragraph 18 of the mortgage deed (plaintiff's exhibit 2). Louis Mason further testified that prior to 1997 he and his wife were involved in divorce negotiations, and it was discovered that the subject mortgage was on his property. He claims it was only after his lawyer asked for a release that he got the demand letter from Attorney Maresca. This suit followed with a return date of December 9, 1997.
The court finds the following facts to have been proven: the original note was for $55,000 with interest at the rate of thirteen and a half percent and executed by the defendants on June 23, 1986; that note was secured by a mortgage on property of the defendants Louis and Melody Mason in Trumbull, Connecticut; the note called for repayment of the loan by 17 interest only payments of $618.75 commencing in April, 1986, with a final payment of $55,000 in principal and interest in the amount of $618.75 on January 1, 1988; the defendants paid all the interest payments due under the note; they made only one payment against principal in the amount of $45,000 on February 9, 1988; and, finally, there is still owing on the principal due on the note the sum of $10,000.
As to the First Count seeking a foreclosure of the mortgage from Louis and Melody Mason to the plaintiff, the defendants have Special Defenses that claim that the plaintiff has failed to comply with the acceleration terms of the mortgage contained in paragraph 18 of plaintiff's exhibit 2, thereby violating the Connecticut Unfair Debt Collection Practice Act and the Connecticut Unfair Trade Practices Act. That paragraph provides: ". . . upon Borrowers breach of any covenants or agreements of Borrower in this Mortgage, including the covenants to pay when due to borrower . . . specifying (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in . . . foreclosure sale." There is no question that there never was any effort to comply with that provision of the mortgage in this case at or about the time of the breach of January 1 or February 9, 1988. There never has been any such notice as required since that date. The only writing or notice on the subject of this mortgage was plaintiff's exhibit 3, a letter from Attorney Salvatore Maresca, Jr., the son of the plaintiff Salvatore Maresca, to Louis Mason dated May 22, 1997, more than nine years after the claimed default. That letter obviously does not meet the requirements of paragraph 18 of the mortgage deed. There was, thus, a total failure to comply with the Acceleration CT Page 9119 Clause of the Mortgage Deed.
In support of its Special Defense, the defendants cite the case ofCiticorp Mortgage, Inc. v. Porto, 41 Conn. App. 598, 602-03 (1996). In that case, the Court held:
 The defendant argues that the use of the term shall in the mortgage deed required the plaintiff to give proper notice prior to the foreclosure. We agree with the defendant that the language of the mortgage creates a condition precedent that must be satisfied prior to foreclosure.
 Notices of default and acceleration are controlled by the mortgage documents. Construction of a mortgage deed "is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. The primary rule of construction is to ascertain the intention of the parties. This is done not only from the face of the instrument, but also from the situation of the parties and the nature and object of their transactions." 55 Am.Jur.2d, Mortgages § 175 (1971). A promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such. Id., § 176.
 Applying these principles, we hold that under the terms of the note and mortgage deed proper notice of default is a mandatory condition precedent to an action for foreclosure.
Applying that case to the facts of this case, there clearly was never any compliance with the default and acceleration clause of the mortgage and therefore the plaintiff's cause of action for a foreclosure must fail. Judgment will enter for the defendants on the First Count.
The Second Count mirrors the First Count in that it is an action on the same promissory note dated June 25, 1986, maturing on January 1, 1998. The claim is made for a principal balance of $10,000 plus interest, counsel fees and other costs of collection. To this claim, the defendants have filed a Special Defense that the plaintiff is barred by Connecticut General Statute § 52-576 from collecting on such note.
Section 52-576, insofar as it is applicable to this case, states: "No action for an account or on any single or implied contract, or on any contract in writing shall be brought but within six years after the right CT Page 9120 of action arises." No payments were made after February 9, 1988. This suit was brought more than nine years later and is barred under §52-576 unless some exception to that rule is successfully maintained.
The plaintiff claims that there is a long line of Connecticut cases which hold that subsequent promises of repayment extend the statute of limitations and the debt. He cites Zapolsky v. Sachs, 191 Conn. 1984, 1983; Foster v. Smith, 52 Conn. 449; Potter v. Prudential Insurance Co.,108 Conn. 271; and Sanford v. Clark, 29 Conn. 457. In Zapolsky, the court stated that the defense of the statute of limitations will be lost by an unequivocal acknowledgment of the whole debt, such as a new promise, or an unqualified recognition of the debt or by a payment on the debt. Here there was no additional payment.
The only person testifying for the plaintiffs on this subject was Salvatore Maresca. As previously stated, his testimony about an acknowledgment of the debt by either Joseph or Louis Mason was so vague as to time, amount or specific indebtedness that it could never rise to the level of an unequivocal acknowledgment or unqualified recognition of the debt. The Masons both testified that they never made any such new promise, do not even recall the subject being raised by Maresca, and believed they had in fact paid the debt.
The court finds that the Special Defense under Connecticut General Statute § 52-576 has been proved and judgment shall enter for the defendants on the Second Count.
 ____________________ Gormley, J.