******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MARK R. REYHER *v.* JOHN A. FINKELDEY
## (AC 40296)

Alvord, Sheldon and Mihalakos, Js.

*Syllabus*

The plaintiff, a licensed real estate broker, brought this action against the defendant property owner seeking the payment of a commission allegedly due pursuant to a real estate listing agreement between the parties. The defendant had authorized the plaintiff to offer the defendant's commercial property for sale and agreed to pay the plaintiff a 5 percent commission if the plaintiff procured a buyer who was ready, able and willing to purchase the property for $870,000 or for any other price, or upon such terms as agreed by the seller. During the term of the listing agreement, the plaintiff procured a prospective buyer, V Co., and presented the defendant with a real estate purchase and sales agreement to purchase the property for the listing price of $870,000 contingent on V Co.'s ability to obtain financing and an inspection of the property. The defendant subsequently rejected the offer, and a binding agreement to purchase the subject property was never reached. Thereafter, the plaintiff brought this action against the defendant alleging that the defendant owed him $43,500, which represented the commission he claimed to have earned by procuring V Co. as a buyer pursuant terms of the listing agreement. At trial, V Co.'s principal testified that V Co. was not ready, willing, and able to close on the property without fulfillment of the financing and inspection contingencies. The trial court rendered judgment in favor of the plaintiff and awarded him damages in the amount of $43,500, from which the defendant appealed to this court. *Held* that the trial court erroneously concluded that the plaintiff had met his burden of proving that he procured a buyer that was ready, willing and able to purchase the defendant's property in accordance with the terms of the listing agreement; it is well established that until a contingency contained in a sales agreement has been met, a prospective buyer cannot be said to be ready, willing, and able to purchase, the evidence here demonstrated that V Co. was not ready, willing or able to purchase the defendant's property unless certain contingencies were fulfilled, and it was undisputed that those contingencies were contained in the counteroffer and rejected by the defendant.

Argued April 11—officially released May 22, 2018

*Procedural History*

Action to recover damages for, inter alia, alleged breach of real estate listing agreement, and for other relief, brought to the Superior Court in the judicial district of Middlesex and tried to the court, *Domnarski, J.*; judgment in favor of the plaintiff, from which the defendant appealed to this court. *Reversed; judgment directed.*

*Matthew G. Berger*, for the appellant (defendant).

*Michael Ruben Peck*, for the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant, John A. Finkeldey, appeals from the judgment of the trial court rendered in favor of the plaintiff, Mark R. Reyher, a licensed real estate broker doing business as Reyher Real Estate, requiring payment of his commission. On appeal, the defendant claims that the court improperly concluded that the plaintiff procured a buyer who was ready, willing and able to purchase the defendant's property under the terms of the listing agreement. We agree and, accordingly, reverse the judgment of the trial court.

The following facts, which are undisputed, are relevant to our analysis. On September 14, 2015, the defendant entered into a commercial exclusive agency listing agreement with the plaintiff for the sale of the defendant's property, located at 33 Plains Road in Essex. Under the listing agreement, the defendant authorized the plaintiff to offer the property for sale for the price of $870,000, and agreed to pay the plaintiff a 5 percent commission if he "procure[d] a buyer . . . ready, able and willing to purchase . . . the [property] for [$870,000] . . . or for any other price or upon such terms as may be agreed to by the [seller], as signified by the buyer's . . . execution of a written purchase contract." During the term of the listing agreement,[1] the plaintiff procured a prospective buyer, Valley Railroad Company (Valley), and on October 14, 2015, presented the defendant with a real estate purchase and sales agreement, executed by Valley. Under the purchase and sales agreement, Valley counter offered to purchase the defendant's property for the listing price, $870,000, contingent on (1) its ability to obtain financing, (2) an inspection, and (3) having "120 day[s] to have [the] property reviewed for any environmental considerations." The defendant subsequently rejected Valley's offer, and a binding agreement to purchase the subject property was never reached.

On December 8, 2015, the plaintiff filed this action against the defendant, alleging that he was owed $43,500, a sum representing the commission he claimed to have earned by procuring a ready, willing and able buyer for the defendant's listed property. The case was tried to the court on February 8, 2017. During cross-examination by defendant's counsel, Kevin Dodd, the president of Valley, testified that Valley was not ready, willing and able to close on the property without fulfillment of the financing and inspection contingencies.[2] On March 24, 2017, the court issued a memorandum of decision awarding the plaintiff damages in the amount of $43,500. The trial court found that the "plaintiff . . . satisfied his burden of proving entitlement to a commission under the terms of the listing agreement . . . [having] procured a prospective buyer, who offered to pay the full price stated on the listing agreement. In the listing agreement, the seller did not require any addi-

tional terms or conditions to be contained in an offer. [Valley] was ready, willing, and able to close the transaction in accordance with the offer presented to the seller. The defendant, therefore, breached his contract obligations to the plaintiff." This appeal followed.

We turn to our standard of review and the legal principles that guide our resolution of the defendant's claim on appeal. The law is well settled that a real estate broker who procures a buyer ready, willing and able to purchase the subject property on the owner's terms is entitled to a commission pursuant to the provisions of a valid listing agreement. See, e.g., *Vincent Metro, LLC* v. *Ginsberg*, 139 Conn. App. 632, 638–39, 57 A.3d 781 (2012), cert. denied, 308 Conn. 907, 61 A.3d 1097 (2013). "The right of a brokerage firm to recover a commission depends upon the terms of its employment contract with the seller. To be enforceable, this employment contract, often called a listing contract, must be in writing and must contain the information enumerated in General Statutes § 20-325a (b).[3] . . . To recover its commission, the brokerage firm ordinarily must show that it has procured a customer who is ready, willing, and able to buy on terms and conditions prescribed or agreed to by the seller. . . . In the alternative, the broker may be entitled to recover if it has brought the buyer and the seller to an enforceable agreement. . . . Our Supreme Court has repeatedly held that a broker who has, in accordance with a listing contract, found a purchaser ready, willing, and able to purchase, on the owner's own terms, is entitled to its commission even though no contract for the sale of the property has ever been executed." (Citations omitted; footnote added; internal quotation marks omitted.) Id.; see also *Dyas* v. *Akston*, 137 Conn. 311, 313, 77 A.2d 79 (1950) ("[t]his rule does not require that the parties enter into an enforceable agreement *but only that the offer of one party fairly meets the terms of the other*" [emphasis added]).

It is well established that until a contingency contained in a sales agreement has been met, a prospective buyer cannot be said to be ready, willing and able to purchase. See *Frumento* v. *Mezzanotte*, 192 Conn. 606, 617, 473 A.2d 1193 (1984) ("[a] proposed purchaser [of land] cannot be said to be able to purchase when he is dependent upon [a purchase price loan from a third party] who [is] in no way bound to furnish the funds" [internal quotation marks omitted]); *Menard* v. *Coronet Motel, Inc.*, 152 Conn. 710, 711–12, 207 A.2d 378 (1965) (broker not entitled to commission under listing agreement where prospective buyers' obligation to purchase was contingent upon their ability to sell their real estate); *Eames* v. *Mayo*, 97 Conn. 725, 727–28, 117 A. 802 (1922) (broker not entitled to commission where sale subject to verification of condition of defendant's business generally satisfactory to prospective buyers); *Kost* v. *Reilly*, 62 Conn. 57, 61–62, 24 A. 519 (1892)

(broker not entitled to commission where sale conditioned upon buyer obtaining license).

On appeal, it is the function of this court to determine whether the trial court's finding of fact, that the plaintiff procured a buyer ready, willing and able to purchase the defendant's property, is clearly erroneous. See, e.g., *Revere Real Estate, Inc.* v. *Cerato*, 186 Conn. 74, 78–79, 438 A.2d 1202 (1982); *William Raveis Real Estate, Inc.* v. *Stawski*, 31 Conn. App. 608, 611, 626 A.2d 797 (1993). "This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Frumento* v. *Mezzanotte*, supra, 192 Conn. 617–18; see also *Goldblatt Associates* v. *Panza*, 24 Conn. App. 250, 252, 587 A.2d 433 (1991). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *NRT New England, LLC* v. *Jones*, 162 Conn. App. 840, 853, 134 A.3d 632 (2016).

In the present case, the evidence demonstrated that the prospective buyer was not ready, willing or able to purchase the defendant's property unless certain contingencies were fulfilled. In light of the undisputed fact that those contingencies were contained in the counteroffer and rejected by the defendant, the trial court erroneously concluded that the plaintiff had met his burden of proving that he procured a buyer ready, willing and able to purchase the defendant's property in accordance with the terms of the listing agreement.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

[1] The agreement commenced on September 14, 2015, and expired on September 14, 2016.

[2] We also note that, at trial, the plaintiff offered no evidence of Valley's fulfillment of, or ability to fulfill, those three conditions.

[3] Section 20-325a (b) establishes the requirements for the maintenance of an action by a broker for a commission. See *Thornton Real Estate, Inc.* v. *Lobdell*, 184 Conn. 228, 229–30, 439 A.2d 946 (1981). In the present case, the parties do not dispute the validity of the listing agreement. General Statutes § 20-325a (b) provides in relevant part: "No person, licensed under the provisions of this chapter, shall commence or bring any action with respect to any acts done or services rendered after October 1, 1995, as set forth in subsection (a), unless the acts or services were rendered pursuant to a contract or authorization from the person for whom the acts were done or services rendered. To satisfy the requirements of this subsection any contract or authorization shall: (1) Be in writing, (2) contain the names and addresses of the real estate broker performing the services and the name of the person or persons for whom the acts were done or services rendered, (3) show the date on which such contract was entered into or such authoriza-

tion given, (4) contain the conditions of such contract or authorization, (5) be signed by the real estate broker or the real estate broker's authorized agent . . . ."

_____